Tatiana E. ZELL

v.

UNITED STATES of America et al.

Civ. A. No. 77–1626.

United States District Court,
E. D. Pennsylvania.

June 8, 1979.

Donald H. Dalton, Washington, D. C., for plaintiff.

Peter F. Vaira, U. S. Atty., Gary Tilles, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff, claiming discrimination based on sex, national origin and age, brought this action under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA). Plaintiff is presently a Chemist GS–11 and it is her contention that she should be a Chemist GS–12 and that she should have been promoted to a Chemist GS–11 at a much earlier date. The case was tried before the Court, sitting without a jury, from May 7 through May 9, 1979. The parties filed with the Court proposed findings of fact and conclusions of law, and the case is now ready for decision.

The plaintiff in this action, Tatiana E. Zell, is a female born in Prague, Czechoslavakia on February 22, 1922, who came to the United States in 1946 and was naturalized as a United States citizen on June 22, 1954. With approximately six years of prior working experience, she became employed, on July 2, 1956, as a Chemist GS–5 in the Eastern Regional Research Center (ERRC), Agricultural Research Service, United States Department of Agriculture in Wyndmoor, Pennsylvania. She was promoted to Chemist GS–7 in July, 1957, Chemist GS–9 in October, 1960 and Chemist GS–11 in September, 1973. Early in 1960, when Dr. Lee Witnauer became chief of the lab in which plaintiff was working, Dr. Heino Susi was plaintiff's immediate supervisor. On January 2, 1964, plaintiff was transferred to work on another project under Mr. Roy Riemenschneider because plaintiff's work on her project under Dr. Susi's supervision was near completion. In September, 1964 plaintiff filed a grievance in which she alleged, among other things, that the space in which she had to do her work was inadequate; she did not, however, allege that she was being discriminated against because of sex, age or national origin. In satisfaction of the complaint, the plaintiff agreed to be transferred to a project supervised by Dr. Leo Kahn, to which job she was transferred in 1965. On April 19, 1968, plaintiff was transferred to the Plant Products Laboratory, where Dr. Jonathan White was her lab chief and Dr. Zacharius and Dr. Porter were her immediate supervisors. In October, 1971, plaintiff transferred to the new spectroscopy lab, where she worked under Dr. Ogg and, in 1972, under Dr. Osman after Dr. Ogg retired. On January 7, 1975, plaintiff was transferred to the Meat Laboratory where she worked under Dr. Naghski.

Plaintiff claims that she was discriminated against by Dr. Witnauer because of her sex, age and national origin, by Mr. Riemenschneider because of her sex and national origin, by Dr. Susi because of her sex, by Dr. Porter because of her sex, and by Dr. Ogg because of her sex.

Plaintiff holds a B.A. degree in Chemistry from the University of Pennsylvania. She is a member of various professional organizations, including the American Chemical Society, the American Association for the Advancement of Science, and the Society of Applied Spectroscopy, but she has not held any office or committee position in any of these organizations.

Throughout plaintiff's employment at the ERRC, she has received training at government expense. In April, 1960, she took a 15-hour Technical Writing Workshop; in July, 1960, an 80-hour course in Techniques in Infrared Spectroscopy; in September, 1962, a course in Advanced Organic Chemistry which she did not complete; in April, 1968, a 32-hour course in Protein Chemistry; in March, 1971, a 6-hour course in Nuclear Magnetic Resource Spectroscopy; in June and July, 1971, a 40-hour course in

Infrared Spectroscopy; in January, 1972, a course in Elementary Probability and Applied Statistics; and in November, 1974, a course in Fourier Transform Methods and Applications to Spectroscopy. In September, 1967, Dr. Witnauer approved a biochemistry course requested by plaintiff, but plaintiff decided not to take the course.

Prior to 1972, promotions for chemists at the GS–5, GS–7, and GS–9 levels were based on recommendations of their supervisors. Promotions for chemists at the GS–11 level or above were based on recommendations of a peer evaluation panel. The peer evaluation panel, or a subcommittee, also reviewed the work performance of any chemist at the GS–5, GS–7 or GS–9 level who had not been promoted during the preceding three years to determine if he or she had been overlooked for promotion by the supervisor. Beginning in 1972, the scope of the peer evaluation panel was expanded to include promotions of chemists at the GS–9 level. Thus, between 1960 and 1972, when plaintiff was at the GS–9 level, any promotion for the plaintiff would have rested largely with her supervisor, with the peer evaluation panel performing its review function. In performing this function, the peer evaluation panel would review the employee's merit promotion folder, a folder within the control of the employee. The employee was notified annually to update this folder by adding any recent publications and educational pursuits, and the employee could update his or her folder at any time. There was no requirement to notify a GS–9 employee of the results of such a peer evaluation panel review or even that such a review was taking place until after 1967. From 1972 to the present, any promotion for the plaintiff has rested with her peer evaluation panel and not with her supervisors.

In order to be promoted to a GS–11 or GS–12 research chemist, an employee must demonstrate participation in all phases of research. In addition to factors such as educational advancement, awards, honors, speaking engagements and other accomplishments, an additional factor to be considered in the promotion of an employee to a GS–11 or GS–12 research chemist is the quality of the individual's research assignments and publications of his or her research findings. In addition, whether or not the employee has obtained any patents in connection with his or research is another factor.

Plaintiff was evaluated yearly by her supervisor throughout the 1960's and was reviewed by a peer evaluation panel in 1964, 1967, 1970, 1973 and 1977. Her yearly evaluations indicated generally average performance in some categories and below average performance in other categories. The supervisors who plaintiff claims discriminated against her did not give her ratings inconsistent with those given by supervisors who plaintiff agrees did not discriminate against her. In May, 1964, a subcommittee of the peer evaluation panel began its normal 3-year review of plaintiff's work. The reviewers indicated that plaintiff's work and leave record was very poor and that an unsatisfactory performance rating was being considered. On August 28, 1964, Mr. Riemenschneider wrote a memorandum to plaintiff concerning her leave problem. In September, 1964, the peer evaluation panel reviewed plaintiff's performance and did not recommend that she be promoted. A 3-year review of plaintiff's performance was conducted in November and December, 1967 by a peer evaluation panel which found there was no basis for promoting plaintiff, noting that plaintiff exhibited low achievement, had no patents, made no presentations and participated in no conferences or meetings, and that she did not compare favorably with others at the GS–9 level or even with one employee at the GS–7 level.

Plaintiff's next 3-year review by a peer evaluation panel was conducted in August, 1970. The 1970 review concluded that plaintiff was not yet working at the GS–11 level, noting that she had not completed the problem she had been assigned upon her transfer to the Plant Products Laboratory in April, 1968. The evaluation from plaintiff's supervisor, Dr. Porter, in November 1970, also noted plaintiff's inability to com-

plete certain work. In the 1973 review by a peer evaluation panel, plaintiff was recommended for promotion to the GS–11 level. The panel expressed concern, however, as to whether or not plaintiff's position was truly a research position, noting that plaintiff's best accomplishments were in the service and support area and that this area might afford better career advancement opportunities than she would have as a research scientist inasmuch as it seemed questionable that she was operating in a fully independent manner. Based upon the recommendation of the peer evaluation panel, plaintiff was promoted to a GS–11 chemist on September 14, 1973. The peer evaluation panel which reviewed the plaintiff in 1977 found that she was properly evaluated at level GS–11.

In addition to the training Mrs. Zell received at government expense, much was done to assist the development of her career. From approximately 1965 to 1971, she was counseled by Gerald A. Corrigan, who is currently the Administrative Officer at the ERRC and was formerly the Personnel Officer at the ERRC. Others besides Mr. Corrigan counseled plaintiff as to what was required of her by way of performance and contributions in order to obtain a promotion. She was provided opportunities for travel and education and for participation in research assignments intended to broaden her background and enhance her potential for promotion. It was not unusual for research employees to be transferred to new projects, and Mrs. Zell's transfers either were at her request or in response to the needs of the ERRC at the time. In certain instances the transfers were designed affirmatively to enhance her personal and career development.

This employment discrimination case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* The plaintiff alleges that she was discriminated against by reason of her sex, her national origin and her age in that she was denied a promotion between 1960 and 1973 and between 1973 and the present, she was

denied peer group reviews, she was denied the benefits of an affirmative action plan and a career development program, and she was denied educational opportunities.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set out the order and allocation of proof in private, non-class action discrimination cases:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. . . . [If this is done, then] The burden must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. . . . [If this is done, then the plaintiff must] be afforded a fair opportunity to show that [the defendant's] stated reason for his rejection was in fact pretext.

The order and allocation of proof in actions brought under the ADEA is similar to that for Title VII actions: plaintiff is required first to establish a prima facie case of age discrimination and the defendant then has the burden of coming forward with evidence that reasonable factors, rather than age, were the basis for the alleged discriminatory employment practices, with plaintiff retaining the burden of proving the case of discrimination by a preponderance of the evidence. *See, e.g.,* B. L. Schlei & P. Grossman, *Employment Discrimination Law* 401–02 (1976); *Rodriguez v. Taylor,* 569 F.2d 1231, 1239 (3d Cir. 1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Marshall v. Arlene Knitwear, Inc.,* 454 F.Supp. 715, 723 (E.D.N. Y.1978).

In this case, it is clear that the plaintiff, a 57-year-old woman born in Czechoslovakia, is a member of a class protected by Title VII and the ADEA. The plaintiff presented evidence designed to show that she was qualified for promotions which she was denied and that she was denied the benefit of an affirmative action program and a career development plan. In addition, plaintiff

also presented evidence designed to show that defendants' promotion policies, although neutral on their face, nonetheless had a discriminating impact on defendant's female employees, older employees and foreign-born employees. After plaintiff completed the presentation of her evidence, the defendants moved for a dismissal pursuant to Fed.R.Civ.P. 41(b) on the ground that upon the facts and the law, plaintiff showed no right to relief, which motion the Court denied.

On the basis of the evidence presented by the defendants in this case, the Court finds from a preponderance of the evidence that the plaintiff was not denied peer group reviews or educational opportunities and that neither the defendants nor Dr. Witnauer, Mr. Riemenschneider, Dr. Susi, Dr. Porter, or Dr. Ogg discriminated against the plaintiff on the basis of her sex, age or national origin. On the contrary, the Court finds that the plaintiff did not qualify for promotion from 1960 until 1973 and from 1973 until the present because of her failure to sufficiently achieve in any one or more of the areas considered by the defendants as requisite for promotion. In connection with the criteria considered for promotion, the plaintiff did not achieve any awards, honors or patents, did not hold any offices or committee positions in scientific societies, did not make presentations either within or without the ERRC, had relatively few publications and was not a senior author on any publication, did not obtain a post-graduate degree, and generally did not produce research of a quality sufficient to merit promotion.

The plaintiff also claimed that she was denied the benefit of an affirmative action program and a career development plan and that consequently she was discriminated against on the basis of her age, sex and national origin. The Court finds that the defendants did not deny the plaintiff the benefit of an affirmative action program and a career development plan. On the contrary, extensive opportunities for travel and education were made available to her at government expense, and she received counseling concerning her career develop-

ment. She also received transfers to other assignments at her request, and certain research projects were assigned to her for the purpose of enhancing her career development. The Court finds that the defendants have fulfilled their responsibility to the plaintiff by encouraging her to acquire the qualifications needed for her advancement.

Both plaintiff and defendants presented statistical data relating to promotions of female employees, elderly employees and foreign-born employees at the ERRC. Plaintiff contends that these statistics demonstrate discrimination against elderly women who are foreign-born or have foreign accents. Plaintiff admits that her statistics are not as accurate as the official personnel records inasmuch as she based her statistics on incomplete information and on her personal knowledge of employees and their places of birth. Having considered the statistics presented by plaintiff, as well as the statistics presented by the defendants, the Court finds that the defendants' promotion procedures at the ERRC did not have a disparate impact on female employees, elderly employees, foreign-born employees, or elderly female employees who are foreign-born or have foreign accents.

We find that the plaintiff's claim was not frivolous, unreasonable or groundless, but that the preponderance of the evidence demonstrated that plaintiff was not discriminated against on the basis of her sex, age or national origin.

Accordingly, an Order will be filed entering judgment in favor of the defendants, United States of America, Bob Bergland and T. W. Edminster, and against the plaintiff, Tatiana E. Zell. This Memorandum is in lieu of findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.